UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/10/2014
```

-----------------------------------------------------------------------X
                                                                       :
UNITED STATES OF AMERICA,                                              :
                                                                       :
v.                                                                     :          13 Cr. 268 (JMF)
                                                                       :
ILYA ROZENFELD,                                                        :          MEMORANDUM
                                                                       :          OPINION AND ORDER
                                          Defendant.                   :
                                                                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

The Indictment in this case charges thirty-four defendants with a range of crimes.

Defendant Ilya Rozenfeld is charged in only one count — Count Eighteen — with conspiracy to

commit money laundering, in violation of Title 18, United States Code, Section 1956(h).  He

now moves for an order (1) suppressing evidence obtained through a wiretap of a cellular

telephone used by his co-defendant, Dmitry Druzhinsky; (2) directing the Government to provide

a bill of particulars; (3) requiring the Government to identify any and all exculpatory or

impeachment material immediately and to provide all trial exhibits in advance of trial;

(4) directing the Government to disclose any evidence that it intends to introduce pursuant to

Rule 404(b) of the Federal Rules of Evidence; and (5) directing the Government to make

immediate expert-witness disclosure.  For the reasons stated below, Rozenfeld's motion is

DENIED except insofar as he seeks a bill of particulars, as to which the Court reserves judgment.

## THE MOTION TO SUPPRESS

First, Rozenfeld challenges the wiretap evidence on the ground that the Government

failed to establish probable cause.  (Def.'s Mem. of Law ("Def.'s Mem.") (Docket No. 627) 3-

16).  Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18

U.S.C. § 2510 *et seq.*, a court may authorize a wiretap based upon a showing of probable cause that (1) an individual is committing, has committed, or is about to commit, a crime; (2) communications concerning that crime will be obtained through the wiretap; and (3) the telephone to be wiretapped is being used for criminal purposes or is about to be used or owned by the target of the wiretap.  *See* 18 U.S.C. § 2518(3); *see also, e.g.*, *United States v. Yannotti*, 541 F.3d 112, 124 (2d Cir. 2008).  Probable cause requires that the "totality of the circumstances" reflect a "fair probability that . . . evidence of a crime will be found."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also, e.g.*, *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999).  The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that . . . evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238.

Significantly, a defendant seeking to suppress an authorized wiretap "bears a significant burden."  *Rodriguez-Perez*, 2012 WL 3578721, at \*6.  In particular, once a judge has made the requisite probable cause determination, any court reviewing that determination must grant "considerable deference" to the authorizing judge.  *Concepcion*, 579 F.3d at 217 & n.1; *accord Yannotti*, 541 F.3d at 124.  More specifically, the reviewing court's role is limited to "decid[ing] if the facts set forth in the application were minimally adequate to support the determination that was made."  *Yannotti*, 541 F.3d at 124 (quoting *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997)) (internal quotation mark omitted); *accord Concepcion*, 579 F.3d at 217; *cf. United States v. Tortorello*, 480 F.2d 764, 783 (2d Cir. 1973) ("A judge presumably will scrutinize any application and will scrupulously impose the restrictions required by statute.").

Measured against these standards, Rozenfeld's probable cause challenge is easily rejected because, at a minimum, the Government established probable cause to believe that Druzhinsky

was using, or would use, the cellular telephone at issue to violate Title 18, United States Code,

Section 1084.  *See* 18 U.S.C. § 2516(c) (listing Section 1084 among the statutes for which a

wiretap may be authorized).  That Section "provides criminal penalties for persons engaged in

the business of betting or wagering who use a wire communication facility for the transmission

in interstate or foreign commerce of (1) bets or wagers or (2) information assisting in the placing

of bets or wagers on any sporting event or contest or for any transmission of (3) a wire

communication which entitles the recipient to receive money or credit as a result of bets or

wagers." *United States v. Ross*, No. 98 Cr. 1174 (KMW), 1999 WL 782749, at *2 (S.D.N.Y.

Sept. 16, 1999) (internal quotation marks omitted).

       Most relevant for those purposes, the affidavit submitted in support of the wiretap

application at issue identified four communications between Druzhinsky and another defendant

in this case, Hillel Nahmad, in which the two openly discussed placing sports bets.  (May 25,

2012 Affidavit of Robert J. Hanratty (Docket No. 627-1) ¶ B3(h)-(k)).  On or about April 15,

2012, for example, Druzhinsky, using the cellphone at issue, sent Nahmad a text stating "Miami

-3 +102 10 Un 188,5 – 102 10," an apparent reference to the gambling lines on a Miami Heat

basketball game.  (*Id.* ¶ B3(h); *see also id.* ¶ B3(k) (describing another text message from

Druzhinsky to Nahmad with gambling lines on basketball games)).  Five days later, Nahmad told

Druzinsky, using the cellphone at issue, that he wanted to place "'25k' bets" on the "Knicks" and

"Dallas" for "a friend" and to put the bets "on his figure" — apparently a direction to use

Nahmad's account to place $50,000 of bets on basketball games.  (*Id.* ¶ B3(i)).  Similarly, in a

call the next day, Druzhuinsky asked Nahmad: "[H]ow much do you want to bet?"  Nahmad

responded that "[h]e wants to bet five," and Druzhinsky stated: "Ok, he got it."  (*Id.* ¶ B3(j)).

Given the language and amounts of money involved, these communications and the reasonable inferences to be drawn from them are sufficient in themselves to establish probable cause to believe that Druzhinsky was engaged in a sports betting business and was using wire communication facilities (namely, his cellphone) to transmit bets and wagers.  In any event, they are not the only communications described in the Government's affidavit that established that Druzhinsky was engaged in the business of betting.  Among other things, the affidavit also included evidence tending to show that another defendant in this case, Anatoly Golubchik, was running a substantial sports gambling operation (in connection with which he used his cellphone) and that Druzhinsky was a part of that operation.  (*Id.* ¶¶ B3(g), (l)-(w)).  On May 7, 2012, for example, Golubchik and another defendant in this case, Vadim Trincher, were intercepted discussing a man named "Tatarin" who had "called" Golubchik and "said he wanted to put a bet on baseball." (*Id.* ¶ B3(l)).  Golubchik indicated that he had told Tatarin that he was not taking "bets now," but that he would "call him myself when I start taking."  (*Id.* (alterations omitted)).  Golubchik further related that the "Blond" or "Blondie" — a known alias for Druzhinsky (*id.* ¶ B3(c)) — had been asking Golubchik, "What's going on, why [Tatarin] is not paying, there are problems. I don't think we need him."  (*Id.* ¶ B3(l); *see also id.* ¶ B3(g) (describing another communication between Golubchik and Vadim Trincher in which Golubchik referred to someone owing Blondie "500" — presumably a reference to $500,000 — and had "not been paying for four months").

In arguing that the Government failed to establish probable cause, Rozenfeld contends that this evidence established only that Druzhinsky "accepted or would accept bets in several isolated incidents, which does not meet the regularity requirement for a business of betting or wagering under 18 U.S.C. § 1084." (Def.'s Br. 11).  It is true that for the Government to convict

a defendant of violating Section 1084, "it is not sufficient to prove that . . . the defendant was engaged in merely casual, isolated or sporadic transactions."  2 L. Sand et al., Modern Federal Jury Instructions — Criminal ¶ 39-10, at 39-15 (2013).  But to satisfy the business-of-betting-or-wagering element of the offense, the Government "need not establish that making bets or wagers was the defendant's exclusive or even primary source of income," and need not prove any particular "number of bets or dollar volume of bets."  *Id.*  Instead, "[i]t is sufficient . . . if the government establishes that the defendant participated in a regular course of conduct or series of transactions which involved time, attention and labor devoted to betting or wagering for profit." *Id.*  The communications described above, and the reasonable inferences to be drawn from them, were plainly sufficient to establish probable cause under that standard.  Accordingly, the allegations in the Government's affidavit sufficed to establish probable cause that Druzhinsky was committing, had committed, or was about to commit, a violation of Section 1084; that Druzhinsky was using the cellphone at issue to commit that crime; and that communications concerning Druzhinsky's involvement in that crime would be obtained through a wiretap.  More to the point, they were certainly "minimally adequate to support the determination" by the judge who authorized the wiretap that there was probable cause.  *Yannotti*, 541 F.3d at 124.

## DISCOVERY MOTIONS

As noted, Rozenfeld also seeks various discovery-related relief, namely an order (1) directing the Government to provide a bill of particulars; (2) requiring the Government to identify any and all exculpatory or impeachment material immediately and to provide all trial exhibits in advance of trial; (3) directing the Government to disclose any evidence that it intends to introduce pursuant to Rule 404(b) of the Federal Rules of Evidence; and (4) directing the Government to make immediate expert-witness disclosure.  The Court reserves judgment on the

request for a bill of particulars pending the pretrial conference to be held on March 12, 2014. The rest of Rozenfeld's motion is denied substantially for the reasons set forth in the Government's memorandum of law.  (Gov't Mem. of Law (Docket No. 653) 21-25).  The Court will discuss deadlines for the disclosure of exhibits, Rule 404(b) evidence, Jencks Act materials, and impeachment materials at the March 12, 2014 pretrial conference.

## CONCLUSION

For the reasons stated above, Rozenfeld's motion is DENIED, except insofar as he seeks a bill of particulars as to which the Court reserves judgment pending the pretrial conference on March 12, 2014.  The parties should be prepared to address that issue at the conference. Among other things, they should be prepared to address the ratio of allegedly unlawful transactions that Rozenfeld and his co-conspirators engaged in, on the one hand, and the universe of transactions that Rozenfeld was involved in generally, on the other.  (*See* Def.'s Mem. 21 (alleging that Rozenfeld is "a business owner who engages routinely in monetary transactions" and that, absent a bill of particulars, he "would be . . . forced to sift through and to guess about literally thousands of transactions in preparing his defense")).

SO ORDERED.

Dated: March 10, 2014
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

6